UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

   SHELIA A. DUNN,                              Case No. 06-31439-dof
                                                    Chapter 7 Proceeding
                    Debtor.                       Hon. Daniel S. Opperman
_____/
COLLENE K. CORCORAN, Trustee,

   Plaintiff,

v.                                                           Adversary Proceeding No. 06-3243-dof

SHELIA A. DUNN,

   Defendant.
_____/

**OPINION DENYING DEBTOR'S DISCHARGE
PURSUANT TO 11 U.S.C. § 727(a)(4)**

This Adversary Proceeding is before the Court on a complaint filed by Collene K. Corcoran, the Chapter 7 Trustee for Shelia A. Dunn. This Adversary Proceeding was tried before the Court on July 24, 2007, and the Court issued its bench decision on September 25, 2007. This Opinion supplements that bench decision. For the reasons set forth in this Opinion, the Court determines that the Debtor, Shelia A. Dunn, must be denied a discharge under 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4)(A).

**I.
JURISDICTION**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(J), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a).

Page 1 of 9

# II.
# FINDINGS OF FACT

Shelia A. Dunn, the Debtor in this Chapter 7 case, filed a voluntary Chapter 7 petition on July 17, 2006. Prior to filing this petition, the Debtor was approached by her ex-spouse, Quincy Dunn, to consider entering into two purchase and lease transactions that the Debtor hoped would increase her credit score so that she could possibly refinance her residence. As testified by the Debtor, she had tried to refinance her residence in early 2005 and was unable to do so because of a low credit score. The Debtor's ex-spouse told her that by borrowing money to purchase two 2006 Dodge Chargers and then leasing the vehicles to two separate individuals she could establish a better credit history and improve her credit score so that she could refinance her house. Accordingly, in October of 2005, the Debtor agreed to purchase two 2006 Dodge Chargers from Bob Saks Chevrolet, a car dealership, and signed the necessary documents evidencing the purchase and financing of the two vehicles, as well as the acceptance of delivery of the two vehicles. The documents evidencing these transactions were admitted at trial as Exhibits 7 through 18, 20 and 21.

The Debtor testified that she did see one of the vehicles when she signed the documents, but that she left the details of the delivery of the vehicles to the intended lessees to her ex-husband. The Debtor was not aware that there was any problem with the delivery of the vehicles until she received a demand for payment from Wells Fargo Financial Acceptance, one of the lenders involved in this transaction. Although this demand occurred in December of 2005, the Debtor took no action of her own in regard to these vehicles until June of 2006.

On October 20, 2005, the Debtor opened an account with Dort Federal Credit Union ("Dort FCU") as evidenced by Exhibit 5. On October 20, 2005, Debtor deposited $7,003.00 into the Dort

FCU account. On the same day, Debtor deposited $7,003.00 into her existing Flint Area School Employees Credit Union ("FASECU") account.[1] The Debtor testified that she visited casinos and accumulated these monies from her winnings at various casinos. The Debtor also testified that she transferred the money to the Dort FCU account because of a better interest rate and so that she could receive direct deposit of her payroll. A review of the FASECU statement of account of the Debtor, admitted as Exhibit 6, shows that the direct deposit continued to be made into the FASECU for some time after October of 2005. From a review of the statement of accounts for Dort FCU and FASECU, it appears that the direct deposit of the Debtor's payroll check to the Dort FCU account did not occur until June of 2006.

The Debtor testified that in 2001 and 2002, her cousin, Kenneth Wright, lent her over $6,000.00 so that the Debtor could pay for her son's college education. The Debtor stayed in regular contact with her cousin, who informed her that his mother was extremely ill and that he was incurring additional expense to visit her. In early 2006, the Debtor decided to repay her cousin $6,055.00. None of the details of the Debtor's transactions with Mr. Wright were listed in the Debtor's Schedules or Statement of Financial Affairs.

In the spring of 2006, the Debtor decided that she needed to have a break and decided to vacation in Chicago and Atlanta. The Debtor had just obtained a new job with the United States Postal Service, but she was able to obtain a one week leave to travel to Chicago and Atlanta for a vacation.

The Debtor first consulted with a bankruptcy attorney in April of 2006. At that time, the

---

[1] FASECU records reveal these funds were withdrawn the same day as the $7,003.00 draft deposited with Dort FCU.

Page 3 of 9

06-03243-dof    Doc 13    Filed 11/02/07    Entered 11/02/07 17:04:30    Page 3 of 9

Debtor met with her attorney and her ex-husband, Quincy Dunn. In July of 2006, the Debtor signed her Petition, Statement of Financial Affairs, Schedules and Statement of Current Monthly Income and Means Test Calculation.

A review of the Schedules shows that the Debtor did not list her ownership in either one of the two 2006 Dodge Chargers on Line 25 of Schedule B, entitled "Automobiles, Trucks, Trailers, and Other Vehicles and Accessories," although the Debtor did list a 1995 Cavalier and a 2003 Mitsubishi Montero valued at $2,000.00 and $16,566.00, respectively. The Debtor also did not list in Schedule B any contingent claim that she may have against either the reported lessees of these vehicles or against Bob Saks Chevrolet for either failing to deliver the vehicles or failing to take care of the vehicles while in the care of Bob Saks Chevrolet. Likewise, the Debtor in her Statement of Financial Affairs did not disclose the payment to her cousin in Question 3, or disclose any losses from "fire, theft, other causality, or gambling within one year," even though the Debtor testified at trial that she had significant gambling losses, as well as a theft loss as to the two 2006 Dodge Chargers.

The Debtor attended the August 21, 2006, first meeting of creditors. At this first meeting of creditors, the Debtor testified that she owed Bank of America and Wells Fargo for the purchase of the two 2006 Dodge Chargers so that she could enter into a leasing business with her ex-husband, Quincy Dunn. Debtor also testified that she had contacted the Michigan Attorney General's Office regarding these transactions but for the most part she left all of these issues for her ex-husband to handle. Because of the uncertainty regarding the two 2006 Dodge Chargers, the Chapter 7 Trustee, Collene Corcoran, adjourned and continued the first meeting of creditors to September 18, 2006. At the continued first meeting of creditors, the Debtor testified that she had received a call from the Southfield Police Department that one of the vehicles was in a minor accident and that there was a

possible insurance claim for damage to the vehicle. The Trustee requested a copy of the police report from the Southfield Police Department from the Debtor, but did not receive a copy of the police report.

Trustee Corcoran filed the Complaint in this action on October 17, 2006, and the Debtor amended Schedule B to include the two 2006 Dodge Chargers in June of 2007. As of the date of the trial in this matter, the Debtor did not amend any pleadings with this Court to disclose any possible lawsuit or claim that she may have in regard to the two 2006 Dodge Chargers, failed to describe any theft or gambling losses incurred within the one year prior to her July 2006 Bankruptcy Petition and failed to detail any payments made which could constitute a preference under 11 U.S.C. § 547. Moreover, the Debtor failed to either initially disclose or amend Schedule B to detail the two accounts that she had with Dort FCU or FASECU, even though both accounts were in existence prior to her Bankruptcy Petition. Statements from these accounts were provided by the Debtor to the Trustee in the course of discovery in this matter.

## III.
## DISCUSSION

Collene K. Corcoran, as the Chapter 7 Trustee in this matter, filed a Complaint seeking to deny the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(2), 11 U.S.C. § 727(a)(4)(A) and (C). The Court turns to the 11 U.S.C. § 727(a)(4)(A) claim first to determine whether the Debtor made a false oath or account when she signed her bankruptcy schedules and whether she gave false and misleading information concerning her assets and liabilities to the Trustee and the Debtor's creditors.

As detailed in the Findings of Fact, the Debtor was aware of her ownership interest in the two

Page 5 of 9

06-03243-dof   Doc 13   Filed 11/02/07   Entered 11/02/07 17:04:30   Page 5 of 9

2006 Dodge Chargers. The Debtor testified that one of the main reasons for the filing of her Chapter 7 bankruptcy was to discharge her obligation to Wells Fargo and Bank of America in regard to the two 2006 Dodge Chargers. The Debtor did not, however, list an interest in the two 2006 Dodge Chargers, nor did she list any potential claims against any number of parties for the loss of these vehicles. In particular, the Debtor could have described all of her possible claims and loss of these vehicles through Bob Saks Chevrolet, the purported lessees, or an unknown party. The Debtor had many opportunities to disclose any of these facts, but chose not to make any disclosure. Equally telling is the Debtor's failure to list any bank accounts, even though the Debtor knew she had one bank account and opened a second bank account in October of 2005 for the express purpose of receiving a better interest rate and allowing for a direct deposit of her payroll check. Because the Debtor had deposited $7,003.00 in each account in October of 2005, it is inconceivable that the Debtor did not know that she had these accounts when she filed her Bankruptcy Petition. The Debtor also failed to disclose or explain the withdrawal of $6,055.00 from one of these accounts in February of 2006 to repay a loan to her cousin, as well as withdrawal of monies to fund a vacation to Chicago and Atlanta approximately three months before the Debtor filed bankruptcy and one month before she first met with her bankruptcy attorney.

The Debtor's failure to amend any Schedules, even after the September, 2006 first meeting of creditors, to disclose some or all of the assets, is also particularly troubling. In fact, it appears that the Debtor, through her testimony at the trial, was for the first time disclosing certain information, namely the payment to her cousin, a fact that should have been disclosed as early as July of 2006.

As evidenced by Exhibits 5 and 6, the Debtor was able to deposit $7,003.00 which she attributed to her winnings from gambling. The Debtor failed to disclose this income on either her

Schedules, Means Test, or tax returns. At trial, the Debtor testified that she also incurred significant gambling losses that offset her winnings. While this may certainly be true, none of the pleadings filed with this Court evidence that fact or suggest that the Debtor gambled, much less won or lost any money doing so.

Taken as a whole, this Court reaches the inescapable conclusion that the Debtor's Schedules and Statement of Financial Affairs contained a number of inaccuracies and omissions made under oath. The remaining issue, however, is whether the Debtor made these false oaths with a knowing intent to defraud creditors. As to this issue, the Court notes that although there is no direct testimony as to the alleged fraudulent intent by the Debtor, the Court may find fraudulent intent from circumstantial evidence. *Lewis v. Summers (In Re Summers)*, 320 B.R. 630, 642 (Bank. E.D. Mich. 2005); *Stevenson v. Cutler (In Re Cutler)*, 291 B.R. 718, 726 (Bank. E.D. Mich. 2003). In this case, the numerous errors and omissions in the Debtor's Schedules of assets and liabilities, as well as the Statement of Financial Affairs, constitute circumstantial evidence of fraudulent intent.

As in *Summers* and *Cutler*, this Court initially notes that the Debtor has an affirmative duty to disclose all of her assets to the Bankruptcy Court. In *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002), the Sixth Circuit Court of Appeals held that debtors have an "affirmative duty" to disclose all assets. This "paramount duty" and "strict obligation" to accurately and completely consider and answer all questions has been reiterated time and time again by the courts. *See Cutler*, 291 B.R. at 726-27 (citing various decisions).

In comparing *Cutler* and *Summers* with the instant case, the Court notes a striking similarity in the Debtor's actions and apparent attitude in preparing for this bankruptcy and responding to the Trustee's inquiries. This Debtor, who petitioned this Court for the relief of a discharge of her

Page 7 of 9

06-03243-dof    Doc 13    Filed 11/02/07    Entered 11/02/07 17:04:30    Page 7 of 9

obligations, has an affirmative duty to initially disclose all relevant information and to timely supplement that information when a change in circumstances warrant. Much of the Chapter 7 practice in any Bankruptcy Court is dependent upon debtors making full and complete disclosures to the Chapter 7 trustee so that trustee may make a meaningful and informed decision. A trustee must make an early decision in every case, the most important of which is often whether there are assets for the trustee to administer, liquidate and distribute to creditors. Although this might not be the paramount issue in any particular Chapter 7, it is an issue of major importance to creditors of the debtor.

When a trustee is forced to adjourn and continue a first meeting of creditors and then further investigate the existence and nature of assets with little or no help from the debtor, the Chapter 7 trustee is necessarily required to expend time, money, and energy that could be better directed to cases in which a recovery may exist and hopefully at a faster pace so that all parties, debtors and creditors alike, can rebuild their lives. When a debtor fails to make initial disclosures or supplement those disclosures in a timely fashion, unneeded and unnecessary delays occur.

Simply stated, Congress has offered every individual a discharge in exchange for full and complete disclosure of that individual's assets and liabilities. When that covenant has been broken, Congress has directed this Court to either withhold or revoke the discharge, which this Court decides to do in this case. Although any one of the specific inaccuracies in the Schedules and Statement of Financial Affairs standing alone may not seem material, all of these inaccuracies when taken together, lead this Court to the inescapable conclusion that the Debtor knowingly and fraudulently made a false oath or account sufficient to deny the Debtor her discharge under 11 U.S.C. § 727(a)(4)(A).

The Court realizes that the denial of a discharge appears to be a harsh result, especially if one looks at the instant case in a vacuum. However, when placed in the context of the bankruptcy system

and those thousands of debtors who have complied with the rules, a greater injustice results if a debtor, such as the one in this case, is granted a discharge when other debtors who have fully disclosed information and have possibly lost money or property as a result of those disclosures, likewise receive a discharge. Moreover, to the extent that this Opinion encourages debtors in the future to make full disclosure so that the goals of the Bankruptcy Code are met and bankruptcy trustees are allowed to fulfill the duties assigned to them in an efficient and orderly manner, then some additional good is derived.

For the reasons stated in this Opinion, the Court concludes that Shelia A. Dunn be denied a discharge under 11 U.S.C. § 727(a)(4)(A). Consequently, the Court will not decide the remaining issues raised in Plaintiff's Complaint. The Court has entered an Order consistent with this Opinion.

**Signed on November 02, 2007**

                               **/s/ Daniel S. Opperman**
                               **Daniel S. Opperman**
                               **United States Bankruptcy Judge**